**MCM LAW GROUP, P.C.**
Cesar O. Montoya (SBN: 320291)
206 W. 4th St Suite 437
Santa Ana, CA 92701
Phone: (714) 732-0287

Attorney for Petitioner

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| JASSIEL BERNARDO DUARTE MEZA<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security;<br><br>TODD BLANCHE, Attorney General of the United States;<br><br>DAVID J. VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement;<br><br>ERNESTO SANTACRUZ JR., Acting Director, Los Angeles ICE Field Office; and<br><br>WARDEN, Adelanto ICE Processing Center<br><br>Respondents. | Case No.<br><br>**PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS** |

## I. INTRODUCTION

1. Petitioner, Jassiel Bernardo Duarte Meza ("Petitioner") is 30 years old. He was born in Nogales, Sonora, Mexico. **He last entered the United States lawfully on or about September 25, 1996, when he was about one month old. At the time of his entry he was inspected and admitted at Nogales, Arizona, on a B1/B2 visa issued to him as an infant in the form of a border crossing card.** That visa, which bears the stamped date of his entry, was included in the bond packet submitted to the Immigration Judge. (Ex. C at 3, 48–59.) He has lived in Maywood, California, essentially his entire life. He is married to a United States citizen, and they have a five-year-old United States-citizen son who has just started kindergarten. (Ex. C at 4, 85–90.)

2. From 2013 to 2020, the Department of Homeland Security (“DHS”) granted Petitioner deferred action under the Deferred Action for Childhood Arrivals (“DACA”) policy and authorized him to work. Each grant required him to come forward, submit his biometrics, and pass background checks. (Ex. C at 3–4, 60–71.)

3. On August 2, 2026, Los Angeles County Sheriff’s deputies arrested Petitioner on an allegation of vandalism and released him the next morning. Officers of Immigration and Customs Enforcement (“ICE”) were waiting outside

the East Los Angeles Sheriff's Station and took him into custody as he walked out. (Ex. C at 4, 168.) He has no criminal conviction. (Ex. C at 158–64, 168–69.)

4. An Immigration Judge has twice denied Petitioner release, on September 14 and October 14, 2026. Neither order finds that he is a danger. Each states, in a single sentence on a pre-printed form, that he "failed to meet his burden to establish that he is not a flight risk." (Ex. A; Ex. C at 27–29.) The second denial followed a hearing at which Petitioner presented documentary evidence of his 1996 inspection and admission, showed that he may be eligible to adjust his status through his United States-citizen wife, and proposed alternatives to detention up to and including an ankle monitor. (Ex. B at 4–10.) The Immigration Judge identified concerns at the hearing but made no findings resolving them. He took the matter under advisement and issued the one-sentence order later that day. (Ex. B at 4–5, 14–15; Ex. A.)

5. Petitioner does not ask this Court to reweigh evidence. He asks the Court to apply settled law. An Immigration Judge abuses his discretion when he "fails to consider and address in its entirety the evidence submitted by a petitioner and to issue a decision that fully explains the reasons for [its decision]." *Escobar Torrez v. Mullin*, No. 5:26-cv-03368-ADS, 2026 WL 2962654, at *3 (C.D. Cal. Oct. 1, 2026) (quoting *Franco-Rosendo v. Gonzales*, 454 F.3d 965, 966 (9th Cir. 2006)).

And "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Id.* (quoting *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017)). **Courts in this District have ordered immediate release where, as here, an Immigration Judge found a detainee a flight risk without explanation and without considering alternatives to detention.** *Id.* at *3–4; *Santiago Morales v. Mullin*, No. 5:26-cv-04576-CTS, 2026 WL 2678274, at *5–8 (C.D. Cal. Sept. 11, 2026) (same Immigration Judge). *Garcia Del Solar,* decided by a court in this District in a case arising from Adelanto, ordered immediate release on the same ground: an Immigration Judge's flight-risk denial that relied on generalized reasons without an individualized assessment. *Garcia Del Solar v. Mullin*, No. 5:26-cv-05360-AS, 2026 WL 3027139, at *2–4 (C.D. Cal. Oct. 8, 2026). Petitioner placed that decision before the Immigration Judge and argued it at the hearing. (Ex. B at 3:5, 8:15–21, 9:24–10:1.)

6. Petitioner's present custody is unlawful for independent reasons, each set out in Part VI and pleaded in Part VII. **First,** and most directly, the only decisions cited to justify his detention state no reasons, address none of the evidence that bore most directly on flight risk, and do not consider the alternatives to detention

that the Constitution requires be considered when the only concern is appearance (Count I). **Second,** Respondents deprived Petitioner, a 30-year resident whom DHS repeatedly vetted and granted deferred action, of his liberty without any individualized determination or opportunity to be heard before the deprivation (Count II). Count II challenges the August 3 seizure itself and does not depend on either bond decision. In the alternative, due process required DHS to bear the burden at any custody hearing (Count III).

7. Petitioner acknowledges, and addresses directly, contrary authority holding that a later Immigration Judge custody decision may supply an independent basis for detention. *Jacinto Chacon v. Mullin*, 2026 WL 2127177 (C.D. Cal. July 21, 2026). That reasoning turned on a custody determination that was unchallenged, unappealed, and made after the government carried a clear-and-convincing burden. None of those conditions is present here (Part VI.C).

8. Petitioner asks the Court to order his immediate release on conditions that will secure his appearance and, in the alternative, to order a new bond hearing before an Immigration Judge within seven days at which the government bears the burden of proving by clear and convincing evidence that he is a flight risk that no condition or combination of conditions can mitigate.

## II. JURISDICTION

9. This Court has jurisdiction under 28 U.S.C. § 2241(c)(3), because Petitioner is in custody under the authority of the United States in violation of the Constitution and laws of the United States; under 28 U.S.C. § 1331; and under Article I, § 9, clause 2 of the Constitution. The Court may grant declaratory relief under 28 U.S.C. §§ 2201–2202 and issue writs in aid of its jurisdiction under 28 U.S.C. § 1651. A challenge to a noncitizen's present detention lies at the core of habeas. *Doe v. Garland*, 109 F.4th 1188, 1194 (9th Cir. 2024) (as cited in *Santiago Morales*, 2026 WL 2678274, at *2–3).

10. Section 1226(e) of Title 8 "does not limit habeas jurisdiction over constitutional claims or questions of law." *Martinez v. Clark*, 124 F.4th 775, 779 (9th Cir. 2024) (quoting *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011)). **An Immigration Judge's determination that a detainee is a flight risk is a mixed question of law and fact reviewable for abuse of discretion.** *Id.* at 779, 783–85; *Escobar Torrez*, 2026 WL 2962654, at *2–3; *Santiago Morales*, 2026 WL 2678274, at *3, *5.

11. Count II does not challenge any bond decision. It challenges the August 3, 2026 deprivation of liberty itself, a constitutional question no Immigration Judge or the Board of Immigration Appeals ("BIA" or "Board") can decide.

12. Neither 8 U.S.C. § 1252(g) nor § 1252(b)(9) bars review. Section 1252(g) "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). Petitioner challenges none of them. Reading § 1252(b)(9) to reach detention claims "would make claims of prolonged detention effectively unreviewable," because "[b]y the time a final order of removal was eventually entered, the allegedly excessive detention would have already taken place." *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (plurality opinion). Section 1252(b)(9) "is ... not a bar to jurisdiction ... because claims challenging the legality of detention ... are independent of the removal process." *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 810–11 (9th Cir. 2020) (citations omitted) (as quoted in *De La Rosa Gallegos v. Acting or Current Warden*, No. 5:26-cv-02376-SP, 2026 WL 3027134, at *3 (C.D. Cal. Oct. 8, 2026)).

13. Petitioner seeks only individualized relief. Section 1252(f)(1) bars classwide injunctions against the operation of certain immigration provisions but expressly preserves relief "with respect to the application of such provisions to an individual alien." 8 U.S.C. § 1252(f)(1); *see Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022).

## III. VENUE

14. Venue is proper in this district under 28 U.S.C. § 1391(e)(2). Petitioner is detained by Respondents at the **Adelanto ICE Processing Center** in Adelanto, California, which lies within this District and Division, and the officer in charge of custody decisions in Petitioner's case is located within this judicial district. Petitioner is subject at any time to transfer to another ICE detention facility. Undersigned counsel has no notice of any planned transfer and requests that Petitioner remain within the jurisdiction of this Court pending resolution of this Petition.

## IV. PARTIES

15. Petitioner **Jassiel Bernardo Duarte Meza (A204-891-670)** is a native and citizen of Mexico. He is detained by ICE at the Adelanto ICE Processing Center, 10250 Rancho Road, Adelanto, California 92301, within this District and Division.

16. Respondent MARKWAYNE MULLIN is sued in his official capacity as Secretary of DHS. In that capacity, he is responsible for the implementation and enforcement of the Immigration and Nationality Act ("INA") and oversees ICE, the component agency responsible for Petitioner's detention. He is a legal custodian of Petitioner.

17. Respondent TODD BLANCHE is sued in his official capacity as Attorney General of the United States. In that capacity he oversees the Executive Office for Immigration Review ("EOIR"), which administers the immigration courts and the Board.

18. Respondent DAVID J. VENTURELLA is sued in his official capacity as Acting Director of ICE. He is a legal custodian of Petitioner and has authority to release him.

19. Respondent ERNESTO SANTACRUZ JR. is sued in his official capacity as Acting Director of the Los Angeles ICE Field Office. He is charged with the detention and removal of noncitizens falling under the jurisdiction of that Field Office and is a legal custodian of Petitioner.

20. Respondent WARDEN, Adelanto ICE Processing Center, is sued in his or her official capacity as the warden of the facility where Petitioner is held. The Warden has immediate physical custody of Petitioner pursuant to a contract with ICE. In habeas cases challenging immigration detention, the proper respondent is the warden of the facility where the detainee is held. *See Doe v. Garland*, 109 F.4th 1188, 1197 (9th Cir. 2024).

## V. STATEMENT OF FACTS

### A. Lawful Admission and Thirty Years of Residence

21. Petitioner, Jassiel Bernardo Duarte Meza ("Petitioner") is 30 years old. He was born in Nogales, Sonora, Mexico. **He last entered the United States lawfully on or about September 25, 1996, when he was about one month old. At the time of his entry he was inspected and admitted at Nogales, Arizona, on a B1/B2 visa issued to him as an infant in the form of a border crossing card.** That visa, which bears the stamped date of his entry, was included in the bond packet submitted to the Immigration Judge. (Ex. C at 3, 48–59.) He has lived in Maywood, California, essentially his entire life. He is married to a United States citizen, and they have a five-year-old United States-citizen son who has just started kindergarten. (Ex. C at 4, 85–90.)

22. By December 2001, at age five, Petitioner was enrolled at Fishburn Elementary School in Maywood, California. He continued in the Los Angeles Unified School District, including the 2007–2008 school year, and attended adult education in 2013. (Ex. C at 3, 140–47.)

23. Before these proceedings, Petitioner had never been apprehended by immigration authorities, had never appeared before an Immigration Judge, and had

never been subject to an order of removal, deportation, or voluntary departure. (Ex. C at 3.) ICE's own record check returned a negative NCIC result. (Ex. C at 167.)

**B. Seven Years of Deferred Action**

24. USCIS received Petitioner's initial DACA request on July 11, 2013, and granted him employment authorization valid from October 9, 2013, through October 8, 2015. (Ex. C at 3–4, 60–64.) USCIS renewed his employment authorization from October 29, 2015, through October 28, 2017. (Ex. C at 4, 65–66.) Petitioner filed another renewal on September 7, 2017, which USCIS approved on February 9, 2018, granting deferred action valid through February 1, 2020. (Ex. C at 4, 67–71, 168.) The Social Security Administration issued him a Social Security number in October 2013. (Ex. C at 4, 42–44.)

25. Each grant required Petitioner to come forward, disclose his identity and address to DHS, and submit his biometrics for background checks. (Ex. C at 4.) Petitioner did not renew his deferred action after February 1, 2020, and does not claim that DACA conferred lawful status or remained in effect when he was detained. After he married a United States citizen in 2022, he intended to obtain lawful permanent residence through her rather than continue renewing deferred action, but had not yet been able to afford the filing costs.

**C. Family, Home, and Work**

26. On March 14, 2022, Petitioner married Carolina Loera, a United States citizen born in California. (Ex. C at 4, 85–88, 91–93.) Their son, a United States citizen, was born in 2021 in Whittier, California, and recently started kindergarten. (Ex. C at 4, 89–90, 179–81.) Petitioner's two siblings are United States citizens. (Ex. C at 4.) His father suffers from unpredictable seizures, and Petitioner has helped care for him. (Ex. C at 4; Ex. B at 9.)

27. Petitioner has lived in Maywood since childhood. Since at least August 2021 he has paid rent for an apartment on East 52nd Street in Maywood, the same address ICE recorded when it arrested him. (Ex. C at 5, 148–55, 166.) He worked in a warehouse from 2015 to 2018 and as a carpenter from 2018 to 2022, and since 2022 he has been self-employed in drywall and construction. (Ex. C at 5; Ex. C at 167.)

28. Ms. Loera has agreed to serve as Petitioner's sponsor. She works as a COBRA specialist and earned $64,596 in wages in 2025. She has committed to support Petitioner, to have him live with her and their son, and to ensure that he attends every immigration hearing and ICE appointment. (Ex. C at 5, 91–97.) Family members and friends of more than two decades wrote in support of his release. (Ex. C at 173–93; Ex. B at 9.)

**D. The August 2 Sheriff's Arrest and the August 3 ICE Arrest**

29. On August 2, 2026, the Los Angeles County Sheriff's Department, East Los Angeles Station, arrested Petitioner on an allegation of vandalism under California Penal Code § 594(b)(1). (Ex. C at 4, 158–64.) He was released from the station the next morning. To Petitioner's knowledge, no criminal complaint has been filed arising from that arrest, and he has not been convicted of any offense arising from it. (Ex. C at 4.)

30. ICE's Form I-213 records that the arrest was a planned enforcement action. ICE's Pacific Enforcement Response Center generated a lead identifying Petitioner as a Mexican national "having an arrest for Vandalism." (Ex. C at 167.) At about 7:30 a.m. on August 3, 2026, four ERO officers arrived at the East Los Angeles Sheriff's Station, "where he was expected to be released from custody." At about 8:55 a.m., they saw Petitioner leave the station, approached him, and questioned him; at about 9:05 a.m. they arrested him "without incident." (Ex. C at 168.)

31. The I-213 states that the officers told Petitioner they were executing a warrant and that ERO served him with a Form I-200, Warrant for Arrest of Alien, and a Notice to Appear. (Ex. C at 168.) Petitioner states that when he asked whether the officers had a warrant, an officer responded that he had not renewed

his DACA. Respondents have not produced the Form I-200 to Petitioner or his counsel.

32. The I-213 asserts that Petitioner entered "at an unknown location, without being admitted or paroled." (Ex. C at 168.) It records his DACA history, his United States-citizen son, his self-employment in drywall and construction, and the same Maywood address. (Ex. C at 166–69.) It records no fact suggesting that he had ever failed to appear for an immigration proceeding.

33. DHS issued a Notice to Appear charging Petitioner as removable under 8 U.S.C. § 1182(a)(6)(A)(i), as a noncitizen present without admission or parole. (Ex. C at 23–26.) Petitioner has been detained at the Adelanto ICE Processing Center since August 3, 2026.

**E. Criminal-History Allegations**

34. **Petitioner has no criminal conviction.** (Ex. C at 158–64, 168–69.) The record DHS filed reflects three arrests or citations, none with a recorded disposition:

(a) On March 12, 2016, when Petitioner was nineteen, the Downey Police Department cited him for possession of a substance similar to toluene, Cal. Penal Code § 381(b), and failure to appear after a written

promise, Cal. Penal Code § 853.7, both misdemeanors. (Ex. C at 158–64, 168.)

(b)On February 2, 2019, the Huntington Park Police Department cited him for aiding or abetting an exhibition of speed, Cal. Veh. Code § 23109(c), driving with a suspended license, Cal. Veh. Code § 14601.2(a), and failure to appear after a written promise, Cal. Penal Code § 853.7, all misdemeanors. (*Id.*)

(c)On August 2, 2026, the Sheriff's Department arrested him on an allegation of vandalism, Cal. Penal Code § 594(b)(1), listed as a felony. (*Id.*; Ex. C at 169.)

35. Petitioner does not minimize these entries. The two failure-to-appear allegations are the most relevant to flight risk. **But they are allegations attached to misdemeanor citations from ten and seven years ago, the record contains no disposition for either, and nothing in the record suggests that Petitioner has ever failed to appear in an immigration proceeding or to comply with a requirement of DHS.** (Ex. B at 7–8.)

**F. Removal Proceedings and Relief**

36. On September 18, 2026, Petitioner filed an application for cancellation of removal for certain nonpermanent residents, Form EOIR-42B, and paid the

filing and biometrics fees. (Ex. C at 6, 72–84.) Petitioner also has a potentially viable pathway to lawful permanent residence through his United States-citizen wife. The record contains documentary evidence supporting his claim that he was inspected and admitted into the United States in 1996, together with evidence of his marriage to a United States citizen. (Ex. C at 48–59, 85–88.) These facts support potential statutory eligibility for adjustment of status under INA § 245(a), subject to adjudication of his admission, admissibility, qualifying relationship, and all other applicable requirements. His wife has not yet filed Form I-130 but intends to do so. This potential avenue of relief, together with his pending cancellation application and substantial family ties, provides a concrete incentive to appear at future immigration proceedings. His removal proceedings remain pending, and no removal order has been entered.

**G. The September 14 and October 14 Custody Decisions**

37. Petitioner is detained under 8 U.S.C. § 1226(a). People present in the interior are subject to § 1226, not § 1225(b)(2)(A), and "[a] § 1226(a) detainee will be released on bond if he demonstrates by a preponderance of the evidence that he is not a flight risk or a danger to the community." *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1167 (9th Cir. 2026) (as quoted in *Escobar Torrez*, 2026 WL

2962654, at *3). The Immigration Judge adjudicated both of Petitioner's custody requests on that basis. (Ex. A; Ex. C at 27–29.)

38. Represented by prior counsel, Petitioner first sought release on bond. On September 14, 2026, the Immigration Judge denied the request on a pre-printed form, checking "Denied, because" and adding: "the respondent failed to meet his burden to establish that he is not a flight risk." The order states that a fuller memorandum will be provided if Petitioner appeals. (Ex. C at 27–29.) It makes no finding of danger.

39. Through present counsel, Petitioner moved for a new custody redetermination based on materially changed circumstances. 8 C.F.R. § 1003.19(e). He submitted the evidence of his 1996 inspection and admission and his border crossing cards, his DACA approval notices, his school records, his certified marriage certificate, his son's birth certificate, his pending application for cancellation of removal, his wife's tax records and sponsor declaration, proof of his residence, and letters of support. (Ex. C at 1–193; Ex. B at 2–3.) He also submitted a brief and a copy of *Garcia Del Solar*, in which this Court had ordered release after the Immigration Judge there denied bond on generalized flight-risk grounds. (Ex. B at 3.) The Immigration Judge admitted all exhibits from both parties without

objection. (Ex. B at 2–4.) DHS's evidence consisted of the I-213 and Petitioner's criminal-history records. (Ex. B at 3.)

40. At the October 14, 2026 hearing, the Immigration Judge identified the concerns he recalled from the first hearing: the rap sheet's entries for "possession of a controlled substance, driving without a license, and then the vandalism, things that kind of show some challenges in following the law," and "whether or not the relief is speculative." (Ex. B at 4–5.)

41. Petitioner's counsel addressed each concern. (Ex. B at 4–10.) He argued that the new documents established lawful admission and therefore potential eligibility to adjust status as the immediate relative of a United States citizen; that a cancellation application was pending; that the record contained three arrests or citations and no conviction, two of them seven and ten years old; that Petitioner had come forward to DHS for DACA and given his biometrics; and that he had lived at the same address, cooperated at his arrest, and had a United States-citizen wife and son who depend on him. (Id.) Counsel attached *Garcia Del Solar* and argued that, under it, the record could not support a flight-risk finding and an Immigration Judge "may not call relief speculative without" explaining why. (Id. at 8:15–21, 9:24–10:1.) Counsel then proposed that any remaining concern be

addressed through alternatives to detention, "up to the point of an ankle bracelet, check-ins." (Id. at 10.)

42. DHS argued that the sponsor's tax returns did not list her as married, that she lived in Downey while Petitioner listed a Maywood address, that Petitioner had not filed his own tax returns, that he had failed to appear on criminal citations in 2016 and 2019, that the August 2026 arrest was for felony vandalism, and that his relief was speculative. (Ex. B at 10–13.) Counsel replied that the record contained a certified marriage certificate and the sponsor's letter describing Petitioner as her husband, and offered to address any question about the marriage through Petitioner's testimony. (*Id.* at 13–14.)

43. The Immigration Judge stated no findings or reasons at the hearing. He said there were "hundreds of pages for the court's consideration" and that he would review the documents in chambers later that day. (Ex. B at 14–15.) He did not take testimony, did not address the marriage question, and did not address the proposed alternatives to detention.

44. On October 14, 2026, the Immigration Judge again denied release on the same pre-printed form, stating only that "the respondent failed to meet his burden to establish that he is not a flight risk." (Ex. A.) **The order does not say whether the Immigration Judge found a material change in circumstances, does not**

**identify any evidence relied on, makes no finding of danger, and does not mention Petitioner's lawful admission, his adjustment eligibility, his pending application, his family, his sponsor, or any alternative to detention.** (*Id.*) It again states that a fuller memorandum will be provided if Petitioner appeals. (*Id.*)

45. Both parties reserved appeal; any appeal was due November 16, 2026. (Ex. A.) Petitioner timely filed a Notice of Appeal with the Board, which acknowledged receiving it on October 15, 2026. (Ex. D at 1.) The appeal is pending, and the Immigration Judge has not yet issued the memorandum the order describes.

**H. Current Detention and Release Plan**

46. Petitioner remains detained at the Adelanto ICE Processing Center. (Ex. A.) If released, he will live with his wife and son in Downey; his wife, who has stable employment, has committed to support him and to ensure that he attends every hearing and ICE appointment. (Ex. C at 91–97.) Through counsel, he has offered on the record to comply with electronic monitoring and reporting requirements. (Ex. B at 10.)

## VI. LEGAL ARGUMENT

### A. Scope of Review

47. After *Wilkinson v. Garland*, 601 U.S. 209 (2024), an Immigration Judge's determination whether a noncitizen is dangerous or a flight risk "is a mixed question of law and fact and is reviewable as a 'question of law.'" *Martinez*, 124 F.4th at 779; *Escobar Torrez*, 2026 WL 2962654, at *2–3. Review is for abuse of discretion: the court "cannot reweigh evidence" but determines "whether the BIA applied the correct legal standard." *Martinez*, 124 F.4th at 784–85 (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)). Petitioner invokes only that review.

48. *Martinez* arose under 8 U.S.C. § 1226(c) and found the danger determination reviewable partly because the court-ordered hearing there left no "added layer of agency discretion." 124 F.4th at 784. The same is true under § 1226(a): a detainee "will be released on bond if he demonstrates by a preponderance of the evidence that he is not a flight risk or a danger to the community." *Rodriguez Vazquez*, 183 F.4th at 1167. Courts in this District therefore apply *Martinez* to § 1226(a) flight-risk denials. *Escobar Torrez*, 2026 WL 2962654, at *2–3; *Santiago Morales*, 2026 WL 2678274, at *3, *5; *Villa v. Mullin*, 834 F. Supp. 3d 957, 961, 963 (C.D. Cal. 2026).

49. A reviewing court takes the agency at its word only "in the absence of any red flags"; it does not credit a "catchall phrase" where the agency "fail[s] to mention highly probative or potentially dispositive evidence." *Martinez*, 124 F.4th at 785 (quoting *Cole v. Holder*, 659 F.3d 762, 771–72 (9th Cir. 2011)). An adequate decision is one that "discussed all evidence that was highly probative or potentially dispositive." *Gonzalez-Juarez v. Bondi*, 137 F.4th 996, 1008 (9th Cir. 2025).

**B. The Flight-Risk Denials Applied No Discernible Legal Standard and Ignored the Alternatives to Detention Petitioner Proposed**

50. An Immigration Judge abuses his discretion "when it fails to consider and address in its entirety the evidence submitted by a petitioner and to issue a decision that fully explains the reasons for [its decision]." *Escobar Torrez*, 2026 WL 2962654, at *3 (quoting *Franco-Rosendo*, 454 F.3d at 966); *see also Santiago Morales*, 2026 WL 2678274, at *5 (an Immigration Judge abuses his discretion "when it fails to state its reasons and show proper consideration of all factors when weighing equities and denying relief" (quoting *An Na Peng v. Holder*, 673 F.3d 1248, 1253 (9th Cir. 2012))). *Garcia Del Solar,* which involved a petitioner detained in Adelanto, applied that standard to a flight-risk denial. Under *Rodriguez Vazquez,* a § 1226(a) detainee "cannot be denied release on bond simply because he entered the United States without being admitted and has been residing here

illegally," and an Immigration Judge who denies bond "by relying on improper, generalized reasons without an individualized assessment of facts relevant to whether Petitioner poses a danger or flight risk" fails to apply that standard "in good faith." *Garcia Del Solar*, 2026 WL 3027139, at *2. The court examined each reason the Immigration Judge gave, asked whether it could lawfully support a flight-risk finding, and then asked what the Immigration Judge had failed to consider. Id. at *3–4. The same analysis applies here.

51. Neither custody denial provides an adequate explanation of the determination made. Although the Immigration Judge identified certain concerns during the October 14 hearing and invited counsel to address them, the hearing concluded without a ruling or findings resolving those concerns. (Ex. B at 4–5, 14–15.) The Immigration Judge took the matter under advisement and subsequently issued a pre-printed order stating only that Petitioner failed to establish that he was not a flight risk. (Ex. A.) Neither the written order nor the hearing transcript explains the weight given to the newly submitted evidence or whether the Immigration Judge considered the proposed alternatives to detention sufficient to mitigate any identified risk.

52. The October 14 decision does not mention any of the evidence that bore most directly on flight risk:

(a)documentary proof that Petitioner was inspected and admitted in 1996, which contradicts the Notice to Appear's allegation of entry without inspection and bears on the *Guerra* factor of "manner of entry" (Ex. C at 48–59);

(b)his resulting prima facie eligibility to adjust status as the immediate relative of a United States citizen (Ex. C at 6; Ex. B at 5–6, 9);

(c)his pending application for cancellation of removal (Ex. C at 72–84);

(d)seven years of DACA compliance, including repeated biometrics submissions to the agency now detaining him (Ex. C at 60–71);

(e)his United States-citizen wife and son, his United States-citizen siblings, and thirty years at the same Maywood address (Ex. C at 3–5, 85–90, 148–55);

(f)his wife's signed sponsorship and financial records (Ex. C at 91–97); and

(g)the alternatives to detention his counsel proposed, including electronic monitoring and check-ins (Ex. B at 10).

53. The record also shows what the Immigration Judge was weighing. At the hearing he identified two concerns: arrests that "show some challenges in

following the law," and "whether or not the relief is speculative." (Ex. B at 4–5.) Both are legally deficient as stated.

54. *First*, arrests without convictions may be considered, *Matter of Guerra*, 24 I&N Dec. 37, 40–41 (BIA 2006), but treating citations from seven and ten years ago, with no recorded disposition, as proof of present unwillingness to appear, without explaining why they outweigh seven years of voluntary compliance with DHS's own requirements, is not an individualized assessment. The Immigration Judge in *Garcia Del Solar* likewise found that the petitioner had "demonstrated in the past an inability or refusal to follow the laws of the United States." 2026 WL 3027139, at *3. The court held that reliance on such generalized considerations, common to nearly every § 1226(a) detainee, is "clearly inappropriate" and "would effectively undermine" § 1226(a)'s provisions for discretionary detention. Id. The Immigration Judge's concern here, that Petitioner's record shows "challenges in following the law" (Ex. B at 4:25–5:4), is the same reasoning applied to dated, undisposed citations. See also *Santiago Morales*, 2026 WL 2678274, at *6–7 (same Immigration Judge).

55. *Second*, **an Immigration Judge's reliance on a "speculative" claim for relief "is itself speculative" where the claim "has not yet been reviewed or decided," and the Immigration Judge must "explain why this factor suggests,**

**in the context of this case, that Petitioner would be particularly unlikely to appear for future proceedings."** *Garcia Del Solar,* 2026 WL 3027139, at *4; see id. (quoting *N.A. v. Warden, Adelanto Det. Facility,* 2026 WL 1045196, at *9 (C.D. Cal. Apr. 15, 2026) (an Immigration Judge "cannot simply presume that unresolved claims are 'speculative' and indicative of flight risk")). *Garcia Del Solar* also faulted the Immigration Judge for denying bond "without ever addressing the extent to which these close family ties might make Petitioner less likely to abscond, given that his wife and four children depend on him." Id. Here, the Immigration Judge had no basis to presume the relief speculative. Petitioner has a pending cancellation application, and documentary evidence of lawful admission supports potential eligibility to adjust status through his United States-citizen wife, upon approval of the immediate-relative petition she intends to file (¶ 36). The decision does not explain why a person with a potential path to lawful permanent residence would forfeit it by absconding. Petitioner placed *Garcia Del Solar* before the Immigration Judge and argued its application to these facts (Ex. B at 3, 8–10); the decision does not address it.

56. At the bond hearing Petitioner's Counsel argued in support of all the evidence presented to the Immigration Judge. (Ex. B at 5–6, 9.) **A person with documentary evidence of lawful admission, who has never left the United**

**States and is married to a United States citizen, has every reason to appear: his potential path to permanent residence runs through the very proceedings he would forfeit by absconding.** That is the opposite of an incentive to flee. A finding of flight risk that does not grapple with that fact, or explain why it is outweighed, does not apply the correct standard.

57. Petitioner acknowledges that DHS argued, and the Immigration Judge could consider, the two failure-to-appear allegations from 2016 and 2019 (¶¶ 34–35). That is precisely why the decision needed to explain itself. A judge who found those allegations decisive had to say so, explain why they outweighed the evidence in ¶ 52, and explain why the alternatives counsel proposed would not secure Petitioner’s appearance. The decision does none of these things. Because the order is silent and the hearing record contains no reasons, this is not a case in which the Court could “take the BIA at its word.” *Martinez*, 124 F.4th at 785. The failure to mention highly probative evidence is precisely the “red flag” that withdraws deference. *Id.*; *Gonzalez-Juarez*, 137 F.4th at 1008. To the extent the Immigration Judge accepted DHS's criticisms of Petitioner's wife as a sponsor (Ex. B at 11:18–12:18), *Garcia Del Solar* rejected the same approach. There, the Immigration Judge discounted the sponsor's finances; the court held that "a noncitizen's potential difficulty paying a bond is not a reason to deny their release

as a flight risk," and that it was "nonsensical for the IJ to treat [the sponsor] solely as a negative factor on this basis, without even noting whether [his] presence might in other respects weigh in Petitioner's favor." 2026 WL 3027139, at *4 (quoting N.A., 2026 WL 1045196, at *9). The same reasoning applies to DHS's criticisms here, none of which the Immigration Judge resolved. Petitioner's counsel offered to resolve any question about the marriage through Petitioner's testimony; the Immigration Judge took none. (Ex. B at 13:17–14:13.)

58. The failure to consider alternatives is an independent error. “[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions.” *Hernandez*, 872 F.3d at 994 (as quoted in *Escobar Torrez*, 2026 WL 2962654, at *3). Courts have therefore held that Immigration Judges “must consider alternative conditions to confinement if their concern is a risk of flight.” *Escobar Torrez*, 2026 WL 2962654, at *3; *see id.* (quoting *Lopez v. Casey*, No. 26-CV-04949-RFL, 2026 WL 2741864, at *2 (S.D. Cal. Sept. 16, 2026) (“[D]ue process requires IJs to consider alternative conditions to ameliorate risk of flight.”)); *Santiago Morales*, 2026 WL 2678274, at *7.

59. *Martinez* does not hold otherwise. It held only that alternatives need not be considered once a detainee has been validly found *dangerous*, because detention is then "clearly 'reasonably related' to the government's interest in protecting the public." 124 F.4th at 786 (quoting *Hernandez*, 872 F.3d at 991). Here neither decision found danger; both rest on flight risk alone. (Ex. A; Ex. C at 27–29.) *Martinez* expressly distinguished *Hernandez* on that ground. 124 F.4th at 786. Where, as here, the only concern is appearance, *Hernandez* controls.

60. In *Escobar Torrez*, the court ordered immediate release because the hearing transcript showed that the Immigration Judge found flight risk on a single ground and gave "no indication that the IJ considered alternative conditions to detention." 2026 WL 2962654, at *3–4. In *Santiago Morales*, the same Immigration Judge's flight-risk denial was set aside because he did not acknowledge the petitioner's evidence or engage in "any meaningful analysis of potential alternatives to detention." 2026 WL 2678274, at *6–7 (quoting *Heboud v. Blanche*, 2026 WL 2494985, at *6 (C.D. Cal. Aug. 24, 2026)). This record is stronger than either: counsel expressly proposed electronic monitoring and check-ins, and the decision does not mention them. The errors were not harmless: the only finding was flight risk, and the Immigration Judge addressed neither the evidence nor the alternatives that bore directly on it.

61. The October 14 decision is also ambiguous concerning a threshold legal requirement. Section 1226(a)'s regulations "allow detainees to seek an additional bond hearing before an IJ whenever they experience a material change in circumstances warranting a redetermination of custody status." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1195 (9th Cir. 2022). At the hearing, the Immigration Judge instructed Petitioner to demonstrate a material change in circumstances since the prior September 14 custody determination. (Ex. B at 4.) Petitioner presented additional documentary evidence concerning his claimed inspection and admission and identified his September 18, 2026 cancellation-of-removal application. The written order does not disclose whether the Immigration Judge found this evidence insufficient to establish materially changed circumstances under 8 C.F.R. § 1003.19(e), or instead reached the merits and determined that Petitioner remained a flight risk. Without that distinction, meaningful review of the standard applied and the basis for continued detention is impaired.

62. Under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), the private interest is at its strongest; the risk of error is high where a decision gives no reasons and does not address the evidence or the proposed alternatives; and the government's interest is fully served by conditions of release. Petitioner's

continued detention under the October 14 decision violates the Due Process Clause and 8 U.S.C. § 1226(a).

**C. Neither Custody Decision Supplies an Independent Lawful Basis for Detention**

63. Respondents will likely rely on *Jacinto Chacon v. Mullin*, 2026 WL 2127177 (C.D. Cal. July 21, 2026), which held that a later Immigration Judge custody decision mooted a challenge to the initial re-detention. *Id.* at *3. *Jacinto Chacon* does not control here.

64. *First*, its mootness holding rests on authority that habeas relief is unavailable when a later decision supplies "a subsequent, unchallenged basis for detention." *Id.* (quoting *Thiravong v. Scott*, 2026 WL 1382356, at *2 (W.D. Wash. May 18, 2026)). Petitioner challenges both decisions here (Count I) and before the Board (¶ 45).

65. *Second*, the *Jacinto Chacon* hearing was one at which "the government established by clear and convincing evidence that Petitioner is a flight risk and a danger." *Id.* at *2. Petitioner bore the burden at both of his hearings, and neither produced findings. A hearing of that kind is not the process due before liberty is taken, and courts in this District "have ordered release even where a belated bond hearing has taken place." *De La Rosa Gallegos*, 2026 WL 3027134, at *6 (quoting

*Kumar v. Rios*, 2026 WL 1764923, at *7 (C.D. Cal. June 12, 2026)); *id.* at *7 (holding that "the belated bond hearing would not remedy the due process violation" and ordering release); *see Bueso Flores v. Chestnut*, 2026 WL 2678329, at *4 (E.D. Cal. Sept. 11, 2026); *Diaz Hernandez v. Blanche*, No. 5:26-cv-04187-AJR, 2026 WL 2281008, at *4–6 (C.D. Cal. Aug. 4, 2026) (ordering release although a bond hearing was available, because another post-deprivation hearing would not cure detention imposed without required process). **A post-deprivation hearing "cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."** *E.A.T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).

66. *Third*, the *Jacinto Chacon* petitioner abandoned his BIA appeal. 2026 WL 2127177, at *4–5. Petitioner has timely appealed (¶ 45).

**D. Respondents Deprived Petitioner of His Liberty Without Any Pre-Deprivation Process**

67. This claim is independent of the custody decisions. It challenges the August 3, 2026 deprivation of liberty, and its facts appear in Respondents' own I-213 and in USCIS records. (Ex. C at 60–71, 166–69.)

68. Procedural due process asks whether a protected liberty interest exists and, if so, what process is due. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "Freedom from imprisonment ... lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

69. Petitioner is precise about what he claims. His deferred action expired on February 1, 2020, and he did not renew it (¶ 25). He does not claim that DACA was in effect when he was detained. He relies instead on two things: thirty years of residence that began with a lawful admission, and seven years in which DHS repeatedly vetted him, granted him deferred action, and authorized him to work, then left him at liberty for six more years at the same address it had on file.

70. **Courts in this District have found a protected liberty interest on that kind of history, even where deferred action had long since lapsed.** In *De La Rosa Gallegos*, the petitioner had been granted DACA in 2014 and renewed it at least once, in 2016. The court held that because he "established a life for himself in the United States while taking steps to obtain legal status," he "acquired a protected liberty interest in his release from immigration custody." 2026 WL 3027134, at *1, *5; *see id.* (citing *G.B. v. Warden, Golden State Annex Det. Facility*, 2026 WL 2568533, at *4 (E.D. Cal. Aug. 31, 2026) ("liberty interest was created at the time that the government granted petitioner DACA status")). The

court reasoned that the government, "in effect, already made" an individualized determination when it "decided not to detain him in the first place, but instead granted him DACA status," and that "how such criminal history should be weighed is a matter that could have been assessed at a hearing, but was not." *Id.* at *5. It ordered immediate release notwithstanding a DUI conviction and a pending domestic-violence charge. *Id.* at *1, *7. *See also Villa Cambron v. Johnson*, 2026 WL 2584950, at *5 (C.D. Cal. Sept. 1, 2026) (**"Even where a noncitizen's DACA status has expired, their liberty interest does not necessarily expire as well."**); *Hernandez v. Warden, Golden State Annex Det. Facility*, 2026 WL 2099232, at *1 (E.D. Cal. July 21, 2026); *Ramirez v. Warden of Golden State Annex Det. Facility*, 2026 WL 1078250, at *1, *3 (E.D. Cal. Apr. 21, 2026) (release of former DACA recipient whose grant had expired in 2021).

71. *De La Rosa Gallegos* also forecloses the argument that an administrative warrant supplies the missing process. The petitioner there was arrested on an administrative warrant, yet the court held that due process required a pre-deprivation hearing before he was detained. 2026 WL 3027134, at *2, *5–7. Even accepting the I-213's account that a warrant was executed (¶ 31), no officer or neutral decisionmaker assessed whether Petitioner's detention was justified before he was taken into custody, and he had no opportunity to be heard.

72. Each *Mathews* factor favors Petitioner. *First,* his private interest is substantial: thirty years of residence, a United States-citizen wife and son, and a father who depends on his care. *Second,* the risk of error was high: ICE acted on a lead generated by an unadjudicated arrest, recorded his entry as "without inspection" despite the government's own records of his 1996 admission, and made no individualized assessment. *Third,* the government's interest in detaining him without a hearing was minimal. Each time DHS examined Petitioner's circumstances in 2013, 2015, and 2018, it determined that he should remain at liberty and authorized him to work, and it left him undisturbed at the same address for six more years. ICE knew in advance exactly where and when he would be released (¶ 30), and custody hearings are routine. *Villa Cambron*, 2026 WL 2584950, at *6; *Bueso Flores*, 2026 WL 2678329, at *3.

73. *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), does not foreclose this claim. It "addressed the adequacy of the burden allocation at a bond hearing for a person already in custody; it did not consider whether the Government may seize a person after years of government-sanctioned liberty without affording any prior process." *Bueso Flores*, 2026 WL 2678329, at *3 (quoting *Gagik T. v. Chestnut*, 2026 WL 1837413, at *3 (E.D. Cal. June 25, 2026)) (emphasis omitted).

74. **Respondents detained Petitioner without notice, without a hearing, and without any individualized determination, in violation of the Due Process Clause. The later hearings, at which he bore the burden and received no reasons, did not cure that violation** (Part VI.C).

**E. In the Alternative, Due Process Required Respondents to Bear the Burden of Proof**

75. The allocation of the burden differs by detention context. In prolonged detention under § 1226(c), the government must prove danger or flight risk by clear and convincing evidence. *Singh*, 638 F.3d at 1203–05. Courts remedying a constitutional violation in the initiation of detention have placed that burden on the government at any re-detention hearing. *Villa Cambron*, 2026 WL 2584950, at *7; *Bueso Flores*, 2026 WL 2678329, at *5; *Hernandez*, 2026 WL 2099232, at *1. In an ordinary § 1226(a) hearing, *Rodriguez Diaz* upheld the default allocation of the burden to the detainee.

76. *Rodriguez Diaz* upheld that allocation for a detainee who received the statute's full protections, which the court described as including "several layers of review of the agency's initial custody determination." 53 F.4th at 1202 (as quoted in *Santiago Morales*, 2026 WL 2678274, at *3–4). It did not foreclose as-applied

challenges, and it rejected the one before it because the detainee had not shown "any unconstitutional failure of the § 1226(a) procedures in his case." *Id.* at 1213.

77. Petitioner can show that failure. He received two custody hearings with the burden on him, and neither produced a statement of reasons, a finding on the evidence he presented, or any consideration of the alternatives he proposed (Part VI.B). As applied to him, due process requires that, at any further custody hearing, Respondents bear the burden of proving by clear and convincing evidence that detention is necessary to secure his appearance. This claim is pleaded in the alternative to immediate release.

**F. Exhaustion Is Not Required**

78. Exhaustion under § 2241 is prudential, not jurisdictional. *Hernandez*, 872 F.3d at 988; *Escobar Torrez*, 2026 WL 2962654, at *3 n.2. It may be excused when administrative remedies are inadequate, pursuit would be futile, irreparable injury will result, or the proceedings would be void. *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

79. *Count II requires no exhaustion.* It challenges the deprivation of liberty without pre-deprivation process, a constitutional question the Board cannot decide. *Ramirez*, 2026 WL 1078250, at *2–3. **That injury was complete on August 3,**

**2026, before any custody proceeding could have occurred, and no later administrative hearing can supply the process that was due before it.**

80. *Count I.* Petitioner has appealed the October 14 decision (¶ 45) and has bypassed nothing. *Cf. Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). Further exhaustion should be excused. *Garcia Del Solar,* 2026 WL 3027139, at *2 n.4 (excusing exhaustion where a BIA appeal was pending "because Petitioner would be significantly harmed if forced to wait for appellate review, and no appellate record or agency expertise is needed to review the issues presented here").

81. Continued detention pending a BIA bond appeal would cause irreparable injury specific to Petitioner. He has been detained since August 3, 2026, separated from his wife and his five-year-old son, who has just started kindergarten; his household has lost the income he provided; and he can no longer help care for his father, who suffers from seizures. (Ex. C at 4; Ex. B at 9.) Courts have excused exhaustion on materially identical showings. *Escobar Torrez*, 2026 WL 2962654, at *3 n.2 (petitioner's family relied on her for financial and emotional support); *Salazar-Sorto v. Mullin*, No. 5:26-cv-04690-KES, 2026 WL 2621203, at *6 (C.D. Cal. Sept. 4, 2026). Whether an Immigration Judge must consider alternatives before denying release for flight risk is also a recurring legal

question that weighs against requiring exhaustion. *Salazar-Sorto*, 2026 WL 2621203, at *6.

82. In the alternative, if the Court concludes that the Board should first review Count I, Petitioner asks that the Court stay Count I rather than dismiss it, and decide Count II now. *Leonardo*, 646 F.3d at 1160.

**G. Immediate Release Is the Appropriate Remedy**

83. "[H]abeas corpus is, at its core, an equitable remedy," and courts have "broad discretion in conditioning a judgment granting habeas relief." *Escobar Torrez*, 2026 WL 2962654, at *4 (quoting *Schlup v. Delo*, 513 U.S. 298, 319 (1995), and *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "The typical remedy is, of course, release." *Id.* (quoting *Munaf v. Geren*, 553 U.S. 674, 693 (2008)). Release restores "the last uncontested status which preceded the pending controversy"—here, Petitioner's life with his family before August 3, 2026. *Diaz Hernandez*, 2026 WL 2281008, at *5.

84. **Where an Immigration Judge's flight-risk decision does not apply the correct legal standard, courts in this District order release.** In *Garcia Del Solar,* after concluding that the Immigration Judge "failed overall to provide an individualized assessment of Petitioner," the court held: **"Under the circumstances, the Court finds no basis for Petitioner's continued detention**

**and concludes immediate release with reasonable conditions of supervision is the appropriate remedy."** 2026 WL 3027139, at *4 (quoting *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1081 (W.D. Wash. 2026)); accord *Escobar Torrez*, 2026 WL 2962654, at *4; *Santiago Morales*, 2026 WL 2678274, at *8 (release within 24 hours). Petitioner has already had two hearings before the same Immigration Judge, and both produced the same unexplained result. *See Villa*, 834 F. Supp. 3d at 960, 964 (ordering release after a court-ordered rehearing repeated the same errors).

85. Immediate release is particularly appropriate here for three reasons. *First,* the only interest either decision identified is Petitioner's appearance, and the record already establishes the conditions that would secure it: a fixed residence with his United States-citizen wife and son, a sponsor with stable income, a pending application for relief and a path to permanent residence that depend on his appearing, and his counsel's offer, made on the record, to accept electronic monitoring. (Ex. B at 10; Ex. C at 91–97.) *Second,* Respondents have twice had the opportunity to justify his detention before the same Immigration Judge and have produced only two unexplained denials. *Third,* Petitioner has no conviction, and neither decision found that he is a danger. On this record, "there is uncontested evidence that supports that Petitioner will likely be released in the event of a proper

bond hearing," *Escobar Torrez*, 2026 WL 2962654, at *3 n.2, and a third hearing would only prolong a detention that the record does not support.

86. Release on conditions fully protects the government's interest in Petitioner's appearance, which is the only interest either decision identified. Petitioner asks that Respondents be ordered to release him immediately from the Adelanto ICE Processing Center, with all of his property and documents, on the following conditions:

(a) *Residence.* He will reside with his wife and son at 7928 7th Street, Downey, California 90241, and will notify ICE and the Immigration Court in writing within 48 hours of any change of address, including by filing Form EOIR-33/IC.

(b) *Reporting and monitoring.* He will report to the ICE Los Angeles Field Office as directed and will comply with any Alternatives to Detention program, including electronic monitoring, that ICE imposes.

(c) *Immigration proceedings.* He will appear at every hearing in his removal proceedings.

(d) *Criminal matter.* He will appear at every proceeding in any criminal case arising from the August 2, 2026 arrest.

(e) *Law enforcement contact.* He will not violate any federal, state, or local law.

87. Petitioner also asks that Respondents be enjoined from re-detaining him during his removal proceedings, absent exigent circumstances, without notice and a pre-detention hearing at which Respondents bear the burden of proving by clear and convincing evidence that he is a danger or a flight risk that no condition can mitigate. *Hernandez*, 2026 WL 2099232, at *1; *Villa Cambron*, 2026 WL 2584950, at *7; *De La Rosa Gallegos*, 2026 WL 3027134, at *7. That protection is necessary here because ICE detained Petitioner once on the strength of an unadjudicated arrest, and nothing would prevent it from doing so again at a routine check-in.

88. In the alternative, Petitioner asks that the Court conduct a custody hearing itself within seven days, or order a hearing within seven days before a different Immigration Judge, and prescribe the procedures governing it: advance notice; a meaningful opportunity to present evidence and argument with counsel present; consideration of whether conditions short of detention, including electronic monitoring, can reasonably secure his appearance; consideration of his ability to pay any monetary bond, *Hernandez*, 872 F.3d at 990–91; a statement of reasons sufficient to permit review, addressing the evidence in ¶ 52; and placement on Respondents of the burden of proving by clear and convincing evidence that he

is a flight risk that no condition or combination of conditions can mitigate. Petitioner should be released if no such hearing occurs.

89. Petitioner asks the Court to order Respondents to file with their return the Form I-200 and Form I-286 relating to Petitioner's August 3, 2026 arrest, and any memorandum the Immigration Judge issues explaining either custody decision. *See* 28 U.S.C. § 2243.

90. A discretionary release by Respondents, or a later grant of bond, would not moot this petition. Petitioner seeks a declaration that his detention without pre-deprivation process violated the Fifth Amendment and an injunction against re-detention without notice and a hearing. Those requests preserve a live controversy. *Cf. J.E.C.M. ex rel. Saravia v. Lloyd*, 352 F. Supp. 3d 559, 576–77 (E.D. Va. 2018) (claims of released detainees were moot where they had not sought retrospective relief that could survive release).

## VII. CAUSES OF ACTION

### Count I — Fifth Amendment Due Process and 8 U.S.C. § 1226(a) (Continued Detention Under Legally Deficient Flight-Risk Determinations)

Petitioner incorporates the foregoing paragraphs. The September 14 and October 14, 2026 custody decisions are the only decisions Respondents can cite for Petitioner's present detention. Each finds only that he failed to establish that he is

not a flight risk; neither states any reason, addresses the highly probative evidence before the Immigration Judge, or considers alternatives to detention, although counsel expressly proposed electronic monitoring and check-ins. Because the only concern identified is appearance, due process required consideration of whether conditions short of detention would secure it. Petitioner's continued detention under those decisions violates the Due Process Clause and 8 U.S.C. § 1226(a). *See* Part VI.B.

**Count II — Fifth Amendment Due Process (Deprivation of Liberty Without Pre-Deprivation Process)**

Petitioner incorporates the foregoing paragraphs. Thirty years of residence beginning with a lawful admission, and seven years in which DHS repeatedly vetted Petitioner and granted him deferred action before leaving him at liberty for six more years, gave him a protected interest in his continued freedom. Respondents detained him on August 3, 2026 without notice, without a hearing before a neutral decisionmaker, and without any individualized determination, although the arrest was planned in advance and pre-deprivation process was feasible. That violated the Due Process Clause. This Count is independent of the custody decisions. *See* Part VI.D.

**Count III (In the Alternative) — Fifth Amendment Due Process, As Applied (Allocation of the Burden of Proof)**

Petitioner incorporates the foregoing paragraphs. Petitioner received two custody hearings with the burden on him, and neither produced a statement of reasons, a finding on his evidence, or consideration of the alternatives he proposed. As applied to him, due process requires that at any further custody hearing Respondents bear the burden of proving by clear and convincing evidence that detention is necessary to secure his appearance. This Count is pleaded in the alternative to immediate release. *See* Part VI.E.

## VIII. PRAYER FOR RELIEF

Wherefore, Petitioner respectfully requests that this Court:

(1)Assume jurisdiction over this matter;

(2)Order Respondents to show cause within three days why the writ should not issue, 28 U.S.C. § 2243, and to file with their return the records described in ¶ 89;

(3)Order Respondents not to transfer Petitioner outside the jurisdiction of this Court while this petition is pending;

(4)Declare that Petitioner's continued detention under the September 14 and October 14, 2026 custody decisions violates the Due Process Clause

and 8 U.S.C. § 1226(a) (Count I), and that his detention without pre-deprivation process violated the Due Process Clause (Count II);

(5)Grant the writ of habeas corpus and order Respondents to IMMEDIATELY RELEASE Petitioner from the Adelanto ICE Processing Center on the conditions set out in ¶ 86 or such conditions as the Court deems appropriate, and to return all property and documents taken from him;

(6)Order Respondents to file a notice of compliance within 48 hours of release, stating the date and time of release;

(7)Order that Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner during his removal proceedings, absent exigent circumstances, without at least seven days' written notice describing the change in circumstances asserted and a pre-detention hearing before a neutral decisionmaker at which Respondents bear the burden of establishing by clear and convincing evidence that he is a danger to the community or a flight risk that no condition of release can mitigate, and at which Petitioner may have counsel present;

(8)In the alternative, order a custody hearing within seven days consistent with ¶ 88, with release if none occurs (Count III);

(9)In the further alternative, stay Count I pending the BIA appeal and decide Count II; and

(10)Grant any further relief this Court deems just and proper.

Respectfully Submitted,

/s/ Cesar O. Montoya (SBN: 320291)
MCM LAW GROUP, P.C.
206 W. 4th St Suite 437
Santa Ana, CA 92701
Phone: (714) 732-0287
Email: cesar@mcmlawpc.com
Counsel for Petitioner

Dated: October 20, 2026

**PROOF OF SERVICE**

I hereby certify that on October 20, 2026, I served a copy of the attached PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS, by EMAIL DELIVERY to:

U.S. Attorney's Office:

**USACAC.ImmHabeas@usdoj.gov**

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

/s/ Cesar O. Montoya (SBN: 320291)
MCM LAW GROUP, P.C.
206 W. 4th St Suite 437
Santa Ana, CA 92701
Phone: (714) 732-0287
Email: cesar@mcmlawpc.com
Counsel for Petitioner

Dated: October 20, 2026