UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JASSIEL BERNARDO DUARTE MEZA,

Petitioner,

v.

MARKWAYNE MULLIN, et al.,

Respondents.

Case No. 5:26-cv-06206-KES

ORDER GRANTING THE PETITION AND ORDERING PETITIONER'S RELEASE FROM CUSTODY

## I. INTRODUCTION

Jassiel Bernardo Duarte Meza ("Petitioner") filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging Petitioner's detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). Respondents answered the Petition ("Answer" at Dkt. 8), and Petitioner replied ("Reply" at Dkt. 10). The parties have consented to the jurisdiction of the Magistrate Judge. (Dkt. 9.)

The Petition is granted and Respondents are directed to immediately release Petitioner from custody.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. Arrival and Status in the U.S. (1996-2026).

Petitioner was born in Mexico. (Pet. at 10, ¶ 21.) He entered the U.S. lawfully in 1996, when he was about one month old. (Pet. at 10, ¶ 21.) He was inspected and admitted in "Nogales, Arizona on a B1/B2 visa issued to him as an infant in the form of a border crossing card." (Pet. at 10, ¶ 21; Pet. Ex. F / Dkt. 1-6 (entry documents).) He has lived in Maywood, California since childhood. (Pet. at 10, ¶ 21; id. at 12, ¶ 27.)

In 2017, Petitioner filed a request for Deferred Action for Childhood Arrivals ("DACA") status, which was granted on February 9, 2018, and was valid through February 1, 2020. (Answer Ex. C / Dkt. 8-3 at 3 (DHS Form I-213); Pet. at 11, ¶ 24.)

In March 2022, Petitioner married a U.S. citizen, and they have a 5-year-old, U.S.-citizen son. (Pet. at 10, ¶ 21; id. at 12, ¶ 26.) Petitioner's two siblings are U.S. citizens. (Pet. at 12, ¶ 26.) He did not renew his DACA authorization because, "after he married a United States citizen in 2022, he intended to obtain lawful permanent residence through her"; however, he has "not yet been able to afford the filing costs." (Pet. at 11, ¶ 25.) Petitioner's father lives in the U.S. and suffers from "unpredictable seizures"; Petitioner "has helped care for him." (Pet. at 12, ¶ 26.)

USCIS granted Petitioner employment authorization through at least October 28, 2017, and he was issued a Social Security number in 2013. (Pet. at 11, ¶ 24.) Petitioner has worked in a warehouse, as a carpenter, and in the drywall and construction industry. (Pet. at 12, ¶ 27.)

### B. Criminal Arrests (2016, 2019, and 2026).

"On March 12, 2016, when he was nineteen, the Downey Police Department cited him for possession of a substance similar to toluene, Cal. Penal Code § 381(b), and failure to appear after a written promise, Cal. Penal Code § 853.7,

both misdemeanors." (Pet. at 14-15, ¶ 34(a); see also Answer Ex. C / Dkt. 8-3 at 3 (DHS Form I-213).)

About three years later, "[o]n February 2, 2019, the Huntington Park Police Department cited him for aiding or abetting an exhibition of speed, Cal. Veh. Code § 23109(c), driving with a suspended license, Cal. Veh. Code § 14601.2(a), and failure to appear after a written promise, Cal. Penal Code § 853.7, all misdemeanors." (Pet. at 15, ¶ 34(b); see also Answer Ex. C / Dkt. 8-3 at 3 (DHS Form I-213).)

On August 2, 2026, Petitioner was arrested by the L.A. County Sheriff's Department on an allegation of vandalism under California Penal Code § 594(b)(1). (Pet. at 13, ¶ 29; see also Answer Ex. C / Dkt. 8-3 at 4 (DHS Form I-213).) "To Petitioner's knowledge, no criminal complaint has been filed arising from that arrest, and he has not been convicted of any offense arising from it." (Pet. at 13, ¶ 29; see also Answer Ex. C / Dkt. 8-3 at 3 (DHS Form I-213, listing this arrest and giving the "disposition" as "not listed").)

**C. Detention by ICE (Aug. 3, 2026).**

ICE received notification of Petitioner's vandalism arrest. (Pet. at 13, ¶ 30; Answer Ex. C / Dkt. 1-3 at 2 (DHS Form I-213).) As Petitioner left the sheriff's station, ICE approached him, asked for his identification, and "informed [him] of the ongoing investigation and that they were executing a warrant for his arrest." (Answer Ex. C / Dkt. 8-3 at 3 (DHS Form I-213).) According to DHS paperwork, Petitioner "admitted to being unlawfully present in the United States." (Id.)

Respondents' Answer attaches a copy of an administrative arrest warrant issued on August 3, 2026. (Answer Ex. A / Dkt. 8-1.) The certificate of service, completed by Deportation Officer Ramirez Molina, states it was served on Petitioner the same day. (Id.) According to Petitioner, when he was arrested, "he asked whether the [ICE] officers had a warrant," and "an officer responded that he had not renewed his DACA"; he alleges that no warrant was ever served on him.

(Pet. at 13-14, ¶ 31.)

DHS issued a notice to appear ("NTA") charging Petitioner as removable under 8 U.S.C. § 1182(a)(6)(A)(i), as a noncitizen present without admission or parole. (Pet. Ex. C / Dkt. 1-3 at 24-26 (the NTA); see also Answer Ex. C / Dkt. 8-3 (DHS Form I-213, indicating Petitioner was charged with "212a6Ai – alien present without admission or parole").)

On August 3, 2026, DHS issued a notice of custody determination, DHS Form I-286, indicating that Petitioner was being detained under "section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations…." (Answer Ex. B / Dkt. 8-2.) Petitioner appears to have signed the form, acknowledge receipt and requesting that an immigration judge ("IJ") review the custody determination. (Id.)

Petitioner remains in ICE custody in Adelanto, California. See ICE Detainee Locator, https://locator.ice.gov/odls/ (A# 204-891-670 (Mexico), last accessed Oct. 29, 2026).

**D. Bond Hearings (Sept. 14 and Oct. 14, 2026).**

On September 14, 2026, Petitioner had a bond hearing before an IJ, who denied bond on the grounds that Petitioner "failed to meet his burden to establish that he is not a flight risk." (Pet. at 17, ¶ 38; Pet. Ex. G / Dkt. 1-7 (IJ's bond order dated 9/14/26).)

Petitioner later obtained new immigration counsel and moved for a new bond hearing based on materially changed circumstances, including new evidence about his family circumstances and immigration history. (Pet. at 17, ¶ 39; Pet. Ex. C / Dkt. 1-3 (Petitioner's motion for a new bond hearing and exhibits).)

A new bond hearing was held on October 14, 2026. (Pet. at 18-19, ¶¶ 40-42.) The IJ did not make any findings at the hearing and took the matter under advisement. (Pet. at 19, ¶ 43; Pet. Ex. B / Dkt. 1-2 (transcript of the hearing on 10/14/26).) Later that day, the IJ issued a check-the-box order, again denying bond

based on flight risk, without any substantive explanation for the ruling. (Pet. at 19-20, ¶ 44; Pet. Ex. A / Dkt. 1-1 (IJ's order dated 10/14/26).) Petitioner appealed the order to the Board of Immigration Appeals ("BIA"), and that appeal remains pending. (Pet. at 20, ¶ 45; Pet. Ex. D / Dkt. 1-4 (filing receipt for appeal dated 10/19/26).)

**E. Current Status of Removal Proceedings.**

Petitioner's removal proceedings remain pending, with an individual hearing currently scheduled for December 2, 2026. See Executive Office for Immigration Review ("EOIR"), Automated Case Information, https://acis.eoir.justice.gov/en/ (A# 204-891-670 (Mexico), last accessed Oct. 29, 2026).

On September 18, 2026, Petitioner filed an application for cancellation of removal for certain nonpermanent residents, Form EOIR-42B, and paid the filing and biometrics fees. (Pet. at 15-16, ¶ 36.) Petitioner alleges that he "also has a potentially viable pathway to lawful permanent residence through his United States-citizen wife"; his wife "has not yet filed [a] Form I-130 but intends to do so." (Pet. at 16, ¶ 36.)

**F. Habeas Proceedings.**

Petitioner filed the present Petition on October 20, 2026. (Dkt. 1.) The Petition raises the following claims:

Ground 1: Respondents violated Petitioner's Fifth Amendment due process rights by detaining him "under legally deficient flight-risk determinations." (Pet. at 43-44; see also id. at 22-32 (arguing that "the flight-risk denials applied no discernible legal standard and ignored the alternatives to detention Petitioner proposed" and that "neither custody determination supplies an independent lawful basis for detention").)

Ground 2: Respondents violated Petitioner's Fifth Amendment due process rights by detaining him without a pre-deprivation bond hearing. (Pet. at 32-37, 44.)

Ground 3: Respondents violated Petitioner's Fifth Amendment due process rights by placing the burden of proof on him, rather than the government, at his two bond hearings. (Pet. at 45.)

The Petition seeks (a) Petitioner's immediate release from custody, and (b) an injunction preventing Petitioner's re-detention absent a pre-detention hearing where the government bears the burden of establishing by clear and convincing evidence that he is a danger or flight risk. (Pet. at 46.)

Respondents answered the Petition on October 27, 2026. (Dkt. 8.) They argue that Petitioner "received a legally adequate bond hearing," which "render[s] his request for release moot." (Id. at 2.) They argue that, under 8 U.S.C. § 1226(e), "district courts do not have jurisdiction to re-weigh evidence or second guess the IJ's bond determination." (Id. at 3.) They also argue that the Petition should be denied because Petitioner "failed to exhaust administrative remedies given he has not completed his appeal to the BIA." (Id. at 4.) The Answer does not directly address Ground 2 of the Petition, i.e., Petitioner's claim that, under due process principles, he should have been given a bond hearing *prior to* his ICE detention.

Petitioner replied on October 28, 2026. (Dkt. 10.) In addition to arguing that the post-detention hearings were deficient (id. at 1-8), Petitioner argues that a "post-deprivation hearing does not cure a deprivation imposed without prior process" (id. at 9). He argues he has a protected liberty interest in remaining free from custody because he "was inspected and admitted in 1996, has lived here for thirty years, and was repeatedly vetted by DHS and granted deferred action and work authorization from 2013 to 2020." (Id. at 10.) He argues exhaustion should be excused as to Ground 2, the due process claim, because the "BIA cannot decide whether Petitioner was owed process before he was detained…." (Id. at 15.)

## III. DISCUSSION

### A. Petitioner is Entitled to Relief on Ground 2.

#### 1. Legal Standard.

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). "[T]he Due Process Clause of the Constitution may require greater procedural protections than a statutory or regulatory scheme provides when freedom from imprisonment is at stake." Perez Bueno v. Janecka, No. 25-cv-03376-CAS-BFM, 2026 WL 309934, at *3, 2026 U.S. Dist. LEXIS 24644, at *7 (C.D. Cal. Feb. 5, 2026). To determine what procedural protections an individual is owed in the event of a government deprivation of a protected liberty interest, courts balance three factors: (a) the private interest that will be affected by the official action; (b) the risk of an erroneous deprivation of such interest and the value of additional procedural safeguards; and (c) the countervailing government interest. Mathews, 424 U.S. at 335.

#### 2. Analysis.

As noted above, Respondents' Answer fails to directly address Petitioner's argument that he was entitled to a pre-deprivation hearing as a matter of due process. Indirectly, the Answer appears to suggest that a post-deprivation bond hearing is sufficient. Under the Mathews factors, as analyzed below, the Court disagrees.

a. Private interest affected.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

District courts have "'overwhelmingly found' that a noncitizen with active deferred action status [under DACA] has a protected liberty interest under the Due Process Clause." Hernandez v. Warden, Golden State Annex Det. Facility, No. 26-cv-3727, 2026 WL 1759597, at *2 (E.D. Cal. June 18, 2026) (collecting cases), R&R adopted in part, rejected in part, 2026 WL 2099232 (E.D. Cal. July 21, 2026) (adopting Magistrate Judge's reasoning but finding that release from custody, rather than the recommended bond hearing, was the appropriate remedy); see also Reyes Servin v. Semaia, No. 5:26-cv-02745-MAR, 2026 WL 1670852, at *3 (C.D. Cal. June 4, 2026) (collecting cases and noting that the "Ninth Circuit has described deferred action as a 'form of parole' and 'stay[ ] of removal'") (quoting Lee v. Holder, 599 F.3d 973, 975 (9th Cir. 2010)); Anderson v. Chernut, No. 26-cv-01960, 2026 WL 809990, at *2 (E.D. Cal. Mar. 24, 2026) (reasoning that the "government's knowing decision not to detain an individual creates a liberty interest in their continued release").

In the present case, the record shows that Petitioner was granted active DACA status at least once, between 2018 and 2020. (Answer Ex. C / Dkt. 8-3 at 3 (DHS Form I-213); Pet. at 11, ¶ 24.) The government did not terminate Petitioner's DACA status. Rather, Petitioner did not seek to renew it because he planned to seek permanent residence status through his U.S.-citizen wife. (Pet. at 11, ¶ 25.)

In granting Petitioner DACA status, "the government necessarily found that

he was under 16 years old when he entered the United States," "that he had continuously resided in the United States for at least five years before January 1, 2010," and that he was not "a threat to national security or public safety." Hernandez, 2026 WL 1759597, at *2. In Hernandez, the district court found that the expiration of Petitioner's DACA status did not "eliminate his vested protected liberty interest," which was "created at the time that the government granted petitioner DACA status" and further supported by the petitioner's years of residence and family ties in the U.S. Id. at *3. The Court finds this reasoning persuasive. Like the petitioner in Hernandez, there is no evidence that Petitioner's DACA status was terminated for cause, and he has established strong familial and community ties to the U.S.

Accordingly, the first Mathews factor favors Petitioner.

b. Risk of erroneous deprivation and value of additional procedural safeguards.

"[T]he risk of erroneous deprivation of liberty is high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker to determine whether Petitioner's detention bears a reasonable relation to the authorized statutory purposes of civil immigration detention: to ensure appearance at future immigration proceedings or to prevent danger to the community." Perez Bueno, 2026 WL 309934, at *4, 2026 U.S. Dist. LEXIS 24644, at *9 (citing Zadvydas, 533 U.S. at 693-94).

Even after two bond hearings before an IJ—the first of which occurred more than a month after Petitioner's ICE detention began—the basis for his detention remains unclear. Although Petitioner was not notified of the reasons for his detention when ICE arrested him on August 3, 2026, internal DHS records reveal that it was caused by his arrest on suspicion of vandalism by the L.A. County Sheriff's Department. Yet there is no evidence that any criminal charges have been filed against Petitioner based on that arrest. The IJ's later orders found that

Petitioner was a flight risk, not a danger to the community, and it is unclear whether the IJ was relying on that arrest or something else.

A pre-deprivation hearing would require the government to produce its evidence of danger or flight risk and give Petitioner an opportunity to challenge that evidence. This is particularly important when the government is relying on a criminal arrest or pending criminal charges—i.e., alleged criminal activity that has not yet been proven in a court of law. Requiring the government to present its evidence *before* the noncitizen's arrest gives them a meaningful opportunity to retain counsel and collect evidence. This is a significant procedural safeguard, and without it, the risk of erroneous deprivation remains high.

c. Countervailing government interest.

As many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously released noncitizens like Petitioner without a pre-detention hearing. See Ramos-Maldonado v. Semaia, No. 26-cv-01202-SSS-AS, 2026 WL 790788, at *4, 2026 U.S. Dist. LEXIS 57088, at *11 (C.D. Cal. Mar. 18, 2026) (collecting cases); Gudavasov v. Marin, No. No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *2, 2026 U.S. Dist. LEXIS 49484, at *6 (C.D. Cal. Mar. 9, 2026) (same). Additionally, the burden of a pre-detention hearing is low. In immigration court, custody hearings are routine and impose minimal cost. In this Court's experience, Respondents are routinely able to comply with orders requiring that such a hearing be held within seven days. Respondents have presented no evidence to the contrary.

d. Appropriate remedy is release, not a post-deprivation hearing.

Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner's due process rights. Allowing the government to "cure" such a violation by providing a post-detention hearing would effectively render any holding that a pre-

detention hearing is required meaningless; the government could always wait until a habeas petition is filed and then offer to hold a hearing.

Many courts have found that a post-detention bond hearing is insufficient in this context. See Gudavasov v. Marin, No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *3, 2026 U.S. Dist. LEXIS 49484, at *6 (C.D. Cal. Mar. 9, 2026) (collecting cases finding that release, rather than a post-detention bond hearing, is the appropriate remedy); Sachin v. Warden, No. 26-cv-00707-MWC-ADS, 2026 U.S. Dist. LEXIS 36819, at *9-11 (C.D. Cal. Feb. 21, 2026) (granting TRO ordering Petitioner's release, instead of a post-deprivation bond hearing, finding "Respondents … fail to recognize that a bond hearing constitutes post-deprivation relief, which has no bearing on whether Respondents provided the requisite pre-deprivation relief.").

In fact, courts have most frequently found that this type of due process violation warrants *both* immediate release from custody *and* an injunction preventing further violations of Petitioner's due process rights. See, e.g., Medrano-Rocha v. Santacruz, 817 F. Supp. 3d 871, 882-83 (C.D. Cal. Jan. 23, 2026); Nieves v. Mullin, No. 5:26-cv-01471-DOC-DSR, 2026 WL 931143, at *4, 2026 U.S. Dist. LEXIS 77391, at *11 (C.D. Cal. Apr. 1, 2026); Fernandez v. Semaia, No. 25-cv-03412-SPG-MBK, 2026 WL 136229, at *7, 2026 U.S. Dist. LEXIS 10909, at *25 (C.D. Cal. Jan. 13, 2026).

Based on the weight of this persuasive authority, the Court will enter both types of relief here.

**B. Grounds 1 and 3 are Dismissed as Moot.**

Grounds 1 and 3 challenge the result of the two bond hearings Petitioner received in immigration court. These grounds seek the same relief as Ground 2: immediate release from custody. Because the Court finds that Petitioner is entitled to relief on Ground 2, there is no further relief it can grant on Grounds 1 and 3. Accordingly, these grounds are dismissed without prejudice as moot.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that:

1. Ground 2 of the Petition is granted, and Grounds 1 and 3 are dismissed as moot.
2. Respondents shall **immediately release** Jassiel Bernardo Duarte Meza (A# 204-891-670) from custody.
3. If Respondents have not released Petitioner **within three (3) days** of the date of this order, Petitioner may file a request for an order to show cause re contempt.
4. Respondents shall not re-detain Petitioner without providing Petitioner a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that (a) Petitioner is a flight risk or a danger such that Petitioner's physical custody is required, or (b) on account of changed circumstances, there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future.[1]

DATED: October 29, 2026

Karen E. Scott

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

[1] To the extent the Petition seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), Petitioner's counsel would need to file a post-judgment motion that complies with 28 U.S.C. § 2412(d)(1)(B).